UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LAZEREK AUSTIN,<br>   Plaintiff, | )<br>)<br>) | |
| vs. | )<br>) | Case No. 20-1399 |
| NURSE M. HANSEN, et. al.,<br>   Defendants. | )<br>)<br>) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The *pro se* Plaintiff alleges Defendants Nurse M. Hansen, Nurse Torres, and Dr. Tilden violated his constitutional rights at Pontiac Correctional Center based on inadequate medical care. Plaintiff noticed a lump near his abdomen in early 2018. Plaintiff stopped Nurse Rebecca and told her about the lump and she informed Plaintiff it might be a hernia.

In October of 2018, the lump had become painful to the touch and Plaintiff noticed blood in his urine. Plaintiff submitted a sick call request and met with

1

Defendant Nurse Torres. The nurse took Plaintiff's vital signs and referred Plaintiff to urgent care.

On October 30, 2018, Plaintiff saw Nurse M. Hansen. The nurse stated the lump was likely a hernia, so she ordered an x-ray and a urine sample. Plaintiff asked to see a doctor, but the nurse said Plaintiff would be referred after his tests were back. Plaintiff believed he also had an infection and needed antibiotics, but the nurse refused this medication. (Comp, p. 3). Defendant Nurse Hansen told Plaintiff he would be called back with the results of the x-ray and testing in a couple of days.

Plaintiff waited more than a week and heard nothing more. Therefore, he stopped Defendant Nurse Torres several times during her rounds to complain about the lack of follow-up. The nurse told Plaintiff he was not the only inmate in the facility, and he would have to be patient.

Plaintiff submitted another sick call request and filed a grievance concerning his lack of medical care. On November 8, 2018, Plaintiff was called back to the Health Care Unit. An X-ray was taken and Plaintiff met again with Defendant Nurse Hansen.

Plaintiff told the nurse he was now certain he had an infection because he noticed puss and felt pain when he urinated. Defendant Nurse Hansen said she would see if medical staff could take his urine sample that day and left the room. While she was gone, another nurse told Plaintiff that Defendant Nurse Hansen could just order a "urine dip" and it would immediately indicate if Plaintiff had an infection. (Comp., p. 4). Nurse Hansen returned and said Plaintiff would be called in the following day to give a urine sample. Plaintiff again requested antibiotics which were denied.

2

Plaintiff was called back the following day to give a urine sample. But he did not receive any results from the lab nor his x-ray results for weeks. During this time, Plaintiff says he began to feel worse. He was dizzy, fatigued and had a loss of appetite. In addition, Plaintiff suffered with painful muscle spasms in the area of the lump in his stomach.

Plaintiff repeatedly complained to Nurse Rebecca and Defendant Nurse Torres. Defendant Torres "got so frustrated with plaintiff's repeated requests for help she told plaintiff that she didn't care what was wrong with him and she simply started to ignore plaintiff…" (Comp., p. 5).

Plaintiff continued to submit requests for medical care and file grievances as his condition worsened. On December 2, 2018, Plaintiff nearly fainted and other prisoners notified the cell house sergeant. Plaintiff was taken to the Health Care Unit where a nurse performed a urine dip confirming Plaintiff had an infection. Plaintiff was given antibiotics and admitted to the infirmary for observation.

On December 3, 2018, Plaintiff met with Dr. Tilden. The doctor stated Defendant Nurse Hansen should have given Plaintiff antibiotics some time ago and it was likely Plaintiff's infection was the result of not drinking enough water. Plaintiff was given additional antibiotics and sent back to his cell.

Plaintiff says he continued to suffer with fatigue, dizziness, and erectile disfunction, so he submitted another request for medical care. Plaintiff met with a nurse who referred him to urgent care.

Dr. Tilden stated Plaintiff's condition was due to the infection, but given time, Plaintiff would see improvements. The doctor also said there was nothing further he could do for Plaintiff's hernia. Plaintiff says several months later, he still suffers from erectile disfunction and he "still suffers from the hernia." (Comp., p. 6).

Plaintiff says Defendant Nurse Hansen was deliberately indifferent to his medical condition when she delayed testing and failed to follow-up with Plaintiff, failed to provide antibiotics, and failed to refer Plaintiff to a doctor. Defendant Dr. Tilden was deliberately indifferent when he failed to "follow up with plaintiff after his urine test was complete" and failed to provide additional care for Plaintiff's infection and hernia. (Comp., p. 8). Finally, Defendant Nurse Torres was deliberately indifferent when she repeatedly ignored Plaintiff's complaints about his condition and failed to obtain medical care for Plaintiff.

Plaintiff has adequately alleged the three Defendants violated his Eighth Amendment rights. While Plaintiff says he intended to sue the Defendants in their individual and official capacities, his complaint alleges only individual capacity claims. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Defendants Nurse Hansen, Nurse Torres, and Dr. Tilden were deliberately indifferent to Plaintiff's serious medical conditions at Pontiac Correctional Center as outlined in this order. The claims are stated against the Defendants in their individual capacities only. Any additional claims

shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Attempt service on Defendants pursuant to the standard procedures; 2) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 3) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 15th day of December, 2020.

s/James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE